IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                              |   |                              |
|------------------------------|---|------------------------------|
| LISA MILTON                  | : |                              |
|                              | : |                              |
| v.                           | : | Civil Action No. DKC 24-1321 |
|                              | : |                              |
| THE NATIONAL CENTER FOR CHILDREN AND FAMILIES, INC. | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment law case brought by Plaintiff Lisa Milton ("Plaintiff") against her former employer, Defendant The National Center for Children and Families, Inc. ("NCCF" or "Defendant") is the motion to dismiss filed by Defendant. (ECF No. 10). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part.

**I. Background**[1]

From November 2020 until March 2024, Plaintiff worked for the Black Physicians & Healthcare Network ("BPHN"). (ECF No. 1 ¶¶ 6, 53). BPHN is "a Montgomery County initiative intended to connect the County's Black community with quality healthcare services." (ECF No. 14, at 1). Plaintiff worked in several different roles,

---

[1] The following facts are set forth in the complaint and construed in the light most favorable to Plaintiff.

mainly within the BPHN COVID Response Team Program (the "Program"). (ECF No. 1 ¶ 6). When Plaintiff was hired, Motir, a Washington, D.C. organization, served as the administrator for the Program. (ECF No. 1 ¶ 6). Plaintiff was a full-time employee of Motir, and she received health insurance, paid leave, and overtime pay for work she performed over forty hours a week. (ECF No. 1 ¶¶ 8-10).

On or around March 1, 2021, Defendant became the administrator of the Program, and, although Plaintiff's job duties remained the same, Plaintiff's status "changed from a full-time employee with benefits, to an independent contractor without benefits." (ECF No. 1 ¶¶ 12, 17). Plaintiff was supervised by Defendant's executive team and employees, including Ms. Krystal Holland, Ms. Sheryl Chapman, Ms. Jasilyn Morgan, and Ms. Robin Little. (ECF No. 1 ¶ 18).

Defendant gave Plaintiff a Purchase of Services Agreement ("POSA"), setting her pay at $70 per hour, and establishing a maximum pay covering forty hours a week. (ECF Nos. 1 ¶¶ 13-14; 14, at 2). "[T]o perform the services satisfactorily as demanded by NCCF and required by the terms of the [f]irst POSA, [Plaintiff] had to work substantially more than 40 hours per week." (ECF Nos. 14, at 2; 1 ¶ 15).

Plaintiff worked under the first POSA until early July 2021, and then agreed to work until June 2022 under a new POSA. (ECF No. 1 ¶¶ 19-20). Defendant offered Plaintiff a position as a

2

Program Network Coordinator, and Plaintiff accepted the position. (ECF No. 1 ¶¶ 22-23). Plaintiff worked in this role from July 2022 until June 2023. During this time, her "workload doubled, but her rate of pay was decreased from $70 per hour to $56.57 per hour without any notice or an opportunity to negotiate." (ECF No. 1 ¶ 24). Plaintiff's workload increase was partly because Ms. Holland allowed another contractor to work for BPHN and maintain a job outside BPHN, and Plaintiff was required to complete "a substantial amount" of that contractor's work without being paid. (ECF No. 1 ¶¶ 26-27). This pay reduction was set out in Plaintiff's third POSA. (ECF No. 1 ¶ 25). Plaintiff was also "prohibited from working outside of the provision of services under her [t]hird POSA." (ECF No. 1 ¶ 26).

Throughout the first, second, and third POSAs, Plaintiff often worked more than forty hours a week, but she was only paid for forty hours a week. (ECF No. 14, at 3). At some point, "Plaintiff was explicitly instructed not to discuss her employment misclassification with other NCCF employees and contractors and told that such discussion would be case for termination of her contract." (ECF No. 1 ¶ 94).

Almost every day from March 2021 until March 7, 2024, "Plaintiff was given scheduled directives concerning the manner in which she was to complete the daily tasks assigned to her." (ECF No. 1 ¶ 77). Every two weeks, Plaintiff "submitted invoices

pursuant to the terms of her contract," and each time Defendant "would deny her pay for hours worked in excess of the maximum contract hours under each POSA despite requiring her to work those hours." (ECF No. 1 ¶ 78). Defendant instructed Plaintiff to bill only for forty hours a week, even though Defendant "knew that she worked well in excess of 40 hours per week." (ECF No. 1 ¶ 79). "From March 1, 2021[,] until March 7, 2024, Plaintiff worked an average of 14 hours per day six days per week and an average of six additional hours on the seventh day." (ECF No. 1 ¶ 92).

"On at least twenty occasions," Plaintiff raised concerns to multiple supervisors and HR about her wages and her classification as an independent contractor.[2] (ECF No. 1 ¶ 29). For example, in July 2023, Plaintiff expressed concerns about being required to sign an "NCCF Conflict of Interest Policy and Code of Ethics," because Plaintiff thought it was not appropriate to sign the form if she was an independent contractor. (ECF No. 1 ¶¶ 30-31). "Plaintiff was forced to sign anyway for fear of termination of her employment. Plaintiff immediately began finding herself deliberately left out of crucial meetings and deprived of essential

---

[2] While not the subject of the current motion to dismiss, Plaintiff also alleges that she raised concerns about Defendant's "mishandling of funds," including billing discrepancies in Defendant's mental health services contracts and data being submitted to the Montgomery County Department of Health and Human Services. (ECF No. 1 ¶¶ 56-70). Plaintiff alleges that her internal reporting of these concerns also led to retaliation and ultimate termination. (ECF No. 1 ¶¶ 67-70).

information necessary for performing her duties." (ECF No. 1 ¶¶ 32-33). Additionally, on or around November 22, 2023, Ms. Chapman, one of Plaintiff's supervisors required Plaintiff to sign a job description that called her an "employee." (ECF No. 1 ¶ 34). Plaintiff did not wish to sign the job description "for fear of creating legal problems," but her supervisor "insisted that Plaintiff's POSA required her to sign the job description." (ECF No. 1 ¶¶ 35-36). "On or around July 1, 2023,[3] Plaintiff was demoted to the position of Health Provider Recruiter in retaliation for raising concerns about her employment status and inadequate pay." (ECF No. 1 ¶ 38).

Plaintiff was given a fourth POSA, and around that time, she "experienced a significant change in her job duties which reduced her standing in NCCF." (ECF No. 1 ¶¶ 39-40). For example, Plaintiff lost the responsibility for supervising other independent contractors and overseeing "community outreach events and partnership collaboration," and she "lost access to resources necessary to perform her duties." (ECF No. 1 ¶¶ 41-42).

In or around October 2023, Plaintiff asked Ms. Little about "the adequacy of her wages" based on "her timesheet, invoices, and

---

[3] Both Plaintiff's complaint and opposition to Defendant's motion to dismiss include this date. (ECF Nos. 1 ¶ 38; 14, at 4). The date does not appear to fit with the timeline of Plaintiff's other alleged dates and overall timeline. Nevertheless, this does not impact the analysis below.

mileage reimbursements." (ECF No. 1 ¶ 43). Later that month, Ms. Little "accused Plaintiff of 'contentious' behavior, and stated that Plaintiff's concerns about her timesheet, invoices, and mileage reimbursement would not be tolerated." (ECF No. 1 ¶ 44). Additionally, Ms. Little "began giving some of Plaintiff's job responsibilities to other independent contractors in retaliation for Plaintiff raising concerns about her wages." (ECF No. 1 ¶ 45). When Plaintiff voiced concern about her ability to perform her job, she was told to "stay in her lane." (ECF No. 1 ¶ 46). Plaintiff also raised concerns with Ms. Holland and others, but "[b]y December of 2023, Plaintiff's attempts to resolve her misclassification and pay-related concerns with Ms. Holland and others resulted in further exclusion from Program events and isolation within the Program such as being intentionally left off Program communications." (ECF No. 1 ¶¶ 47-48).

In December 2023, Ms. Janelle Martinez became the administrator of the Program, and she "began to harass Plaintiff" for expressing her concerns. (ECF No. 1 ¶ 49). On or around February 2, 2024, Plaintiff had a call with Ms. Martinez, and Plaintiff shared that she felt she was being retaliated against, and that she was concerned she would be terminated. (ECF No. 1 ¶ 51). Ms. Martinez told Plaintiff that she was "'doing a great job' and assured Plaintiff that she had nothing to worry about." (ECF No. 1 ¶ 52).

On March 7, 2024, Plaintiff was terminated by Defendant. (ECF No. 1 ¶ 53). Plaintiff alleges that her termination was "in retaliation for complaining about her unlawful misclassification and inadequate pay." (ECF No. 1 ¶ 54).

Plaintiff filed a complaint against Defendant on May 6, 2024, for violations of the Fair Labor Standard Act ("FLSA"), the Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL"), as well as for wrongful termination, breach of contract, and unjust enrichment. Plaintiff asserts federal question jurisdiction and supplemental jurisdiction over the state law claims. On July 2, 2024, Defendant filed a partial motion to dismiss Count VI-wrongful termination, Count VII-breach of contract, and Count VIII-unjust enrichment. (ECF No. 10). On August 19, 2024, Plaintiff filed a response in opposition to Defendant's motion to dismiss. (ECF No. 14). On August 30, 2024, Defendant filed a reply in support of its motion to dismiss. (ECF No. 15).

## II. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). A plaintiff's

complaint needs only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. Analysis

Three counts are relevant to the pending motion: wrongful termination (Count VI), breach of contract (Count VII), and unjust enrichment (Count VIII). In its motion to dismiss, Defendant argues that Plaintiff has failed to state a claim for each of these counts. (ECF No. 10).

**A. Count VI: Wrongful Termination**

Plaintiff alleges that she was wrongfully terminated. (ECF No. 1, at 21-22). Defendant argues that Plaintiff fails to state a claim for wrongful termination because Plaintiff failed to plead the particular public policy allegedly violated, and she has an available statutory remedy. (ECF No. 10, at 3). In her response, Plaintiff voluntarily dismisses Count VI; therefore, Count VI is dismissed. (ECF No. 14, at 6).

**B. Count VII: Breach of Contract**

Plaintiff alleges that Plaintiff and Defendant entered into several POSAs. Plaintiff alleges that Defendant violated Maryland contract law by

> [F]ail[ing] to meet its obligation to act in good faith and deal fairly with Plaintiff by imposing a maximum number of paid hours under the POSAs knowing that it would take Plaintiff nearly twice the maximum hours to complete the contemplated work satisfactorily and preventing her from obtaining other sources of income or advertising her services to potential other employers.

(ECF No. 1 ¶ 156). Plaintiff contends that Defendant's actions constitute a material breach of the POSAs, and Defendant is liable "for work it required pursuant to the POSAs performed by Plaintiff for which Plaintiff was not paid." (ECF No. 1 ¶ 158).

Defendant argues that Plaintiff has not alleged facts that demonstrate an obligation to Plaintiff that Defendant breached. Defendant also argues that Maryland law does not recognize an independent cause of action for a breach of the implied covenant

of good faith and fair dealing.  Rather, a duty of good faith and
fair dealing is part of a breach of contract action, and "Plaintiff
does not allege any other facts to support her breach of contract
claim." (ECF No. 10, at 6-7).

Plaintiff argues that her complaint alleges she had contracts
with Defendant which required her to perform specific services and
set her hourly pay rate.  Plaintiff contends that while the
contract limited Plaintiff's compensation to payment for forty
hours a week, the contract did not prohibit Defendant from
requiring Plaintiff to work more than forty hours a week.
Nevertheless, Plaintiff argues that Defendant breached the
contract by requiring Plaintiff to work more than forty hours a
week Defendant agreed to pay Plaintiff.  Because Defendant "had
discretion to require that [Plaintiff] work more than 40 hours in
a week, under its implied duty of good faith and fair dealing, if
it required her to do so, it was contractually obligated to pay
her for the additional hours." (ECF No. 14, at 8-9).

As this court recently stated:

> "Under Maryland law, the elements of a claim for
> breach of contract are "'contractual obligation, breach,
> and damages.'" *Kantsevoy v. LumenR LLC*, 301 F.Supp.3d
> 577, 596 (D.Md. 2018) (quoting *Tucker v. Specialized
> Loan Servicing, LLC*, 83 F.Supp.3d 635, 655 (D.Md.
> 2015)). "To prevail in an action for breach of contract,
> a plaintiff must prove that the defendant owed the
> plaintiff a contractual obligation and that the
> defendant breached that obligation." *Jaguar Land Rover
> N. Am., LLC v. Manhattan Imported Cars, Inc.*, 738
> F.Supp.2d 640, 649 (D.Md. 2010) (citing *Taylor v.*

> *NationsBank, N.A.*, 365 Md. 166, 175 (2001)). Maryland
> law requires that a plaintiff "alleging a breach of
> contract 'must of necessity allege with certainty and
> definiteness' *facts* showing a contractual obligation
> owed by the defendant to the plaintiff and a breach of
> that obligation by defendant." *Jaigobin v. U.S. Bank*,
> NA, No. 18-cv-1776-DKC, 2019 WL 4598000, at *7 (D.Md.
> Sept. 23, 2019), *aff'd*, 797 F.App'x 776 (4th Cir. 2020)
> (quoting *RRC Northeast, LLC v. BAA Maryland, Inc.*, 412
> Md. 638, 655 (2010)) (emphasis in original). . . .
>
> "Maryland recognizes that every contract imposes
> a duty of good faith and fair dealing in its
> performance." *Doe v. Maryland*, No. 20-cv-1227-ELH, 2021
> WL 1174707, at *37 (D.Md. Mar. 29, 2021) (citing *Food
> Fair Stores, Inc. v. Blumberg*, 234 Md. 521, 534 (1964)).
> "However, Maryland courts have not explicitly recognized
> a separate cause of action for breach of this duty." *Md.
> Physician's Edge, LLC v. Behram*, No. 17-cv-2756-DKC,
> 2019 WL 4573417, at *8 (D.Md. Sept. 20, 2019) (quoting
> *Abt Associates, Inc. v. JHPIEGO Corp.*, 104 F.Supp.2d
> 523, 534 (D.Md. 2000)). "A breach of the covenant of
> good faith and fair dealing supports another cause of
> action, such as breach of contract" and is thus "merely
> part of an action for breach of contract." *Zos v. Wells
> Fargo Bank, N.A.*, No. 16-cv-00466-GJH, 2017 WL 221787,
> at *3 (D.Md. Jan. 18, 2017) (citing *Mount Vernon v.
> Branch*, 170 Md.App. 457, 471-72 (2006)).

*Gregory Packaging, Inc. v. Sodexo Operations, LLC*, No. 24-cv-187-DKC, 2024 WL 4335666, at *2-3 (D.Md. Sept. 26, 2024).

Plaintiff has not identified a contractual obligation that Defendant breached. Plaintiff herself concedes that "[n]othing in the POSAs prohibited [Defendant] from requiring [Plaintiff] to work more than 40 hours per week." (ECF No. 14, at 8). Because there is no separate cause of action for a breach of good faith and fair dealing under Maryland law, Plaintiff has failed to state a claim for breach of contract.

C. Count VIII: Unjust Enrichment

Plaintiff alleges that Defendant "had a contractual and equitable obligation" to pay Plaintiff for the work she completed above the forty hours set out in the POSAs. Plaintiff "conferred benefits upon Defendant by working hours in excess of her maximum contract hours pursuant to the POSAS—at Defendant's direction—and performing work pursuant to other employees' and contractors' job descriptions, on Defendant's behalf." Additionally, Defendant had "an appreciation or knowledge" of these benefits. (ECF No. 1 ¶¶ 159-163).

Defendant argues that Plaintiff has not stated a claim for unjust enrichment because Plaintiff and Defendant had multiple valid contracts, and Plaintiff has a statutory remedy. (ECF No. 10, at 8-9).

Plaintiff argues that although she has alleged there was a valid contract, she is permitted to plead unjust enrichment as an alternative pleading under Fed. R. Civ. P. 8(a)(3) in the event the contract is not enforceable, or the statutes are inapplicable. (ECF No. 14, at 9-11).

Defendant contends that in order to plead in the alternative for unjust enrichment, a plaintiff must plead fraud or bad faith in the formation of the contract. (ECF No. 15, at 3-4).

To plead unjust enrichment, a plaintiff must show 1) a benefit conferred upon the defendant by the plaintiff; 2) knowledge by the

defendant of the benefit; and 3) the acceptance by the defendant "of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007). "[G]enerally, quasi-contract claims such as . . . unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists." *SciRegs Int'l, Inc. v. Identi Pharms., LLC*, No. 21-cv-2270-DLB, 2022 WL 2116855 (D.Md. June 13, 2022) (quoting *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 609 (Md. 2000)). "But the Maryland courts also provide several exceptions, one of which [] allow[s] restitution for unjust enrichment 'when the express contract does not fully address a subject matter.'" *Martz v. Day Dev. Co., L.C.*, 35 F.4th 220 (4th Cir. 2022) (quoting *Janusz v. Gilliam*, 404 Md. 524, 947 A.2d 560, 567–68 (2008)).

Plaintiff has alleged a benefit she conferred on Defendant, the work she performed in excess of forty hours a week. She has also alleged that Defendant had knowledge of this benefit because she raised the issue with multiple supervisors over the years. Lastly, she has alleged that Defendant accepted the benefit by continuing to accept the work she performed. Although Plaintiff has stated that there is an express contract between her and Defendant, neither party has provided the contract, so it is unclear if the contract fully addresses the overtime work issue.

While Plaintiff's unjust enrichment claim is unlikely to succeed if the contract covered all eventualities, at this early stage, Plaintiff may plead unjust enrichment in the alternative.

### D. Leave to Amend

Plaintiff requests leave to amend if the court dismisses Count VII or VIII. Plaintiff argues that there would be no unfair prejudice to Defendant, the amendments would be made in good faith, and they would not be futile. (ECF No. 14, at 11-12). Defendant opposes Plaintiff's request for leave to amend. (ECF No. 15, at 4-5).

Federal Rule of Civil Procedure 15(a)(2) provides that when a party wishes to amend its pleading, "[t]he court should freely give leave when justice so requires." Under Local Rule 103.6, however, "[w]henever a party files a motion requesting leave to file an amended pleading, the original of the proposed amended pleading shall accompany the motion." The United States Court of Appeals for the Fourth Circuit has recognized that "where . . . the plaintiff fails to formally move to amend and fails to provide the district court with any proposed amended complaint or other indication of the amendments he wishes to make, the district court [does] not abuse its discretion in denying a motion to amend the complaint." *Osei v. Univ. of Md. Univ. Coll.*, No. 15-cv-2502-DKC, 2018 WL 2117927, at *3 (D.Md. May 8, 2018) (quoting *Estrella v. Wells Fargo Bank, N.A.*, 497 Fed.Appx. 361,

14

362 (4th Cir. 2012) (internal quotation marks omitted)).  Plaintiff failed to provide the court with her proposed amended complaint. Accordingly, Plaintiff's request to amend her complaint is denied without prejudice.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted in part and denied in part.  Plaintiff's request to amend the complaint will be denied without prejudice.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
