IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| LISA MILTON | : | |
| | : | |
| v. | : | Civil Action No. DKC 24-1321 |
| | : | |
| THE NATIONAL CENTER FOR CHILDREN AND FAMILIES, INC. | : | |

**MEMORANDUM OPINION**

Lisa Milton ("Plaintiff") and The National Center for Children and Families, Inc. ("Defendant") filed a joint motion seeking the court's approval of their settlement agreement on December 20, 2025. (ECF No. 34). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted.

**I.   Background**

The relevant factual background in this case is set out in prior opinions. (ECF Nos. 16, 24). Plaintiff's Amended Complaint asserts violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203, *et seq.* (Counts I, IV), the Maryland Wage and Hour Law ("MWHL"), Md.Code Ann., Lab. & Empl. § 3-401, *et seq.* (Counts II, V); the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501, *et seq.* (Count III), the Maryland False Claims Act ("MFCA"), Md. Code, Gen. Provisions § 8-

101, *et seq*. (Count VIII), and a claim for unjust enrichment (Count VII).[1]

The parties' proposed settlement agreement provides that, upon court approval, Defendant will pay Plaintiff $75,000, minus applicable withholding taxes for alleged unpaid wages. In addition, Defendant, or a third party on Defendant's behalf, will pay Plaintiff $125,000 for alleged non-wage damages, from which there will be no withholdings and for which Plaintiff will receive an IRS Form 1099. Defendant, or an unnamed third party, will also pay Plaintiff's attorney $35,000, for all attorneys' fees and costs.

## II. Analysis

Because Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees, the provisions of the FLSA are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945). Under the first exception, the Secretary of Labor may supervise the payment of back wages to employees, who waive their rights to seek liquidated damages upon

---

[1] The court issued a Memorandum Opinion and Order on May 15, 2025, precluding Plaintiff from proceeding on Count VI, Breach of Contract. (*See* ECF Nos. 24, 25).

accepting the full amount of the wages owed.  *See* 29 U.S.C. § 216(c).  Under the second exception, a district court can approve a settlement between an employer and an employee who has brought a private action for unpaid wages pursuant to Section 216(b), provided that the settlement reflects a "reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982); *see also Duprey v. Scotts Co.*, 30 F.Supp.3d 404, 407 (D.Md. 2014).

Although the United States Court of Appeals for the Fourth Circuit has not directly addressed the factors to be considered in deciding whether to approve such settlements, district courts in this circuit typically employ the considerations set forth by the United States Court of Appeals for the Eleventh Circuit in *Lynn's Food Stores*.  *See, e.g.*, *Duprey*, 30 F.Supp.3d at 407-08; *Lopez v. NTI, LLC*, 748 F.Supp.2d 471, 478 (D.Md. 2010).  An FLSA settlement generally should be approved if it reflects "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355.  Thus, as a first step, the *bona fides* of the parties' dispute must be examined to determine if there are FLSA issues that are "actually in dispute." *Id.* at 1354. Then, as a second step, the terms of the proposed settlement agreement must be assessed for fairness and reasonableness, which requires weighing a number of factors, including:  "(1) the extent

3

of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of . . . counsel . . .; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10 (E.D.Va. Sep. 28, 2009) (citing *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975)); *see also Duprey*, 30 F.Supp.3d at 408, 409.  Finally, where a proposed settlement of FLSA claims includes a provision regarding attorneys' fees, the reasonableness of the award must also "be independently assessed, regardless of whether there is any suggestion that a 'conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'"  *Lane v. Ko-Me, LLC,* No. 10-CV-2261-DKC, 2011 WL 3880427, at *3 (Aug. 31, 2011) (citation omitted).

   A.   *Bona Fide* Dispute

"In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Duprey*, 30 F.Supp.3d at 408. Here, there is a *bona fide* dispute.  In the Amended Complaint, Plaintiff alleged that she worked for Defendant from March 2021

4

through March 2024 under a series of Purchase of Services Agreements ("POSAs"). The first POSA was from February 27, 2021, through June 30, 2021. Her title was Clinical Liaison for AAHP. She was paid $70 per hour, not to exceed $72,000 (or approximately 1,029 hours). Although Plaintiff worked substantially more than 1,029 hours during the contract period, she alleges that she was told by Defendant's management not to submit time sheets for any hours over 40 in a week.

The second POSA was for the period from July 1, 2021, to December 31, 2021. Her title was COVID Response Clinical Coordinator, and she was paid at the same rate, $70 per hour. Compensation was limited to $75,600 or $70 per hour x 40 hours per week for 27 weeks. Plaintiff performed the same job responsibilities as the first POSA, which often exceeded 40 hours in a week. She again complained but alleges that she was directed to limit her timesheets to 40 hours per week by Defendant's management.

The third POSA was for the term from January 1, 2022, until June 30, 2022. Plaintiff performed the same duties, working the same hours as under the first and second POSAs, but was paid for 40 hours per week.

The fourth POSA was for the period from early July 2022 through late June 2023. Plaintiff's title was Program Network

Coordinator.  Under this POSA, her workload doubled, but her pay rate was reduced to $56.57 per hour.

In July 2023, Plaintiff signed a fifth POSA reassigning her to the position of Health Provider Recruiter.  The term for this POSA was from July 10, 2023, to June 30, 2024.  She was paid $57 per hour for a maximum of 40 hours per week. Although she regularly worked more than 40 hours per week, she alleges that she was told that she must report no more than 40 hours per week on her timesheet.

Plaintiff asserts that she worked an average of 14 hours per day, six days per week and an average of six hours per day on the seventh day from March 1, 2021, through March 7, 2024.  (ECF No. 26 ¶ 127).  As an example, Plaintiff asserts that in 2023, she should have been paid $121,410 in overtime wages. (ECF No. 26 ¶ 155).

Defendant denies any liability.  Rather Defendant contends that Plaintiff was an independent contractor who was paid under the contractual terms of the POSAs.  Thus, a *bona fide* dispute exists.

### B.   Fairness & Reasonableness

Upon review of the parties' submissions and after considering the relevant factors, *see Duprey*, 30 F.Supp.3d at 409, the Agreement appears to be a fair and reasonable compromise of the parties' *bona fide* dispute.  The parties agreed to settle after

conducting written and documentary discovery and participating in a ten-hour settlement conference. Thus, the parties had sufficient opportunity to analyze Plaintiff's claims and to engage in settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to the trial of this case." *Lomascolo*, 2009 WL 3094955, at *11. Moreover, counsel state that the settlement ". . . is not the product of fraud or collusion." (ECF No. 34, at 5).

Although the settlement amount is a departure from the amount Plaintiff requested, the amount appears to be a fair and reasonable resolution because the parties engaged in informal discovery and settlement discussions. Defendant disputed owing any overtime wages. Plaintiff states that the settlement reflects her "more complete understanding of her reported hours and monies received based on invoices submitted." (ECF No. 34, at 6). Thus, the settlement represents compromises by both parties to resolve this matter.

    **C. Attorneys' Fees and Costs**

The attorneys' fees and costs requested are reasonable. Joseph Creed, counsel for Plaintiff and an attorney with at least twenty years' experience, agreed to accept $35,000 as compensation, which includes $1,129.45 in costs. He attests that he spent 90 hours in representing Plaintiff and his fees are

7

consistent with this court's guidelines.  The amount appears to be reasonable.

### III. Conclusion

For the foregoing reasons, the joint motion to approve the parties' settlement agreement will be granted.  A separate order will follow.

                                                    /s/
                              DEBORAH K. CHASANOW
                              United States District Judge